UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 21-cr-447 (CJN) |
| : | |
| JOSHUA CHRISTOPHER DOOLIN : | |
| MICHAEL STEVEN PERKINS : | |
| OLIVIA MICHELE POLLOCK, : | |
| : | |
| Defendants. : | |

**UNITED STATES' OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

Defendant Olivia Pollock has moved to suppress evidence seized from a van and trailer located on her family's property. ECF Nos. 191, 194. Pollock makes three primary arguments. *First*, she asserts that her father, Ben Pollock—who gave consent to the search—did not own the van. Rather, she did. *Id.* at 2. *Second*, she contends that her father's consent to search the trailer was made under duress and was thus invalid. *Id.* at 4. *Finally*, she argues that, even if the consent to search the van and trailer was valid, the FBI had no right to search any containers within the vehicles. *Id.* at 5. Each of these arguments is without merit and does not warrant an evidentiary hearing. The Court should therefore reject them outright.

**I.    Background**

On the morning of June 30, 2021, the FBI executed a search warrant at the property located at 5325 North Galloway Road in Lakeland, Florida (the "Property"), which agents understood to be occupied by Ben Clark Pollock ("Ben") and his family, including his daughter, Olivia Pollock ("Pollock"), and son, Jonathan Pollock. Prior to commencing the search, members of the FBI's Hostage Rescue Team cleared and secured the Property, including a tan van (the "Van," depicted

1

in Figure 1) and a white trailer (the "Trailer," depicted in Figure 2), which were among the many vehicles and structures on the Property.



*Figure 1: Van*



*Figure 2: Trailer*

FBI agents arrested Pollock, who had been inside of the Van, secured her in a nearby vehicle, and informed of her *Miranda* rights. After Pollock invoked her right to counsel, she was transported to an FBI operation post for processing.

The search warrant for the Property specifically described six structures to be searched but did not include the Van or the Trailer. While the search of the Property was ongoing, Ben and other members of the Pollock family watched the search from nearby lawn chairs. FBI agents freely spoke with Ben and other members of the family while they searched the Property. Believing that Ben was the primary owner of the Property and the structures, vehicles, and trailers on it, agents approached Ben and sought consent to search both the Van and the Trailer. The agents presented Ben with a consent to search form, attached as Exhibit 1, that contained detailed descriptions of the Van and Trailer. Ben signed the consent to search form and agents proceeded to search the Van and the Trailer, where they found, among other things, a cell phone belonging to Pollock, as well as clothes and body armor consistent with items she wore on January 6, 2021. The phone and clothes were found in the Van (the former under an elevated bed, the latter scattered around the vehicle) while the body armor was found in the Trailer, stacked in plain view atop other items.

**II.   Argument**

Pollock argues that the search of the Van and the Trailer were invalid for three reasons: *First*, that Ben was not the owner of the Van and therefore did not have authority to consent to the search; *second*, that any consent Ben gave to search the Van and the Trailer was not given voluntarily; *third*, that even if the FBI was authorized to search the Van and the Trailer, that authorization did not extend to closed containers therein. As discussed below, Pollock is incorrect, both factually and legally. Ben is in fact the owner of the Van, and thus had the ability to consent

to its search. And while Ben did not own the Trailer, because he occupied the Property on which it sat (among other factors), the FBI acted reasonably in relying on his consent, which was freely given. Moreover, Pollock lacks standing to challenge the search of the Trailer. Finally, none of the evidence that the government intends to offer at trial was obtained by opening a closed container within either the Van or the Trailer. As such, Ben's assent, memorialized in a written consent to search form, was sufficient.

### a. Applicable Law

The Fourth Amendment generally prohibits warrantless searches, subject to certain exceptions. One of those exceptions is a situation in which law enforcement obtains permission to conduct a search "from the individual whose property is searched or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (cleaned up). Thus, a person has actual authority to consent to a search, either if she owns the property or has "common authority" over it. *See United States v. Stephens*, 341 F. App'x 947, 948 (4th Cir. 2009) ("Consent may be given by the owner of the property, or a third-party possessing common authority over the place or articles to be searched."); *United States v. Turner*, 23 F. Supp. 3d 290, 304 (S.D.N.Y. 2014) ("Actual authority is present when the consenter has actual rights in the object." (quoting *United States v. Wilburn*, No. 11-cr-15 (GFVT), 2012 WL 1658678, at *2 (E.D.Ky. May 11, 2012)); *United States v. King*, 962 F.2d 1076 (D.C. Cir. 1992) ("In order for the government to rely on the consent of a third party, it must prove by a preponderance of the evidence that the third party either actually possessed, or reasonably appeared to possess, 'common authority over or other sufficient relationship to the premises . . . to be inspected.'" (quoting *United States v. Matlock,* 415 U.S. 164, 171 (1974))).

Such "'[c]ommon authority' does not refer to some kind of 'technical property interest.'" *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014) (quoting *Georgia v. Randolph*, 547

U.S. 103, 110 (2006)).  Rather, it arises from "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."  *Id.* (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)).

Even if a person lacks actual authority to consent, a search may be permissible if she has "apparent" authority to do so.  That is to say, "[e]ven a person who does not *actually* use the property can authorize a search if it is reasonable for the police to believe she uses it.  Such 'apparent authority' is sufficient to sustain a search because the Fourth Amendment requires only that officers' factual determinations in such situations 'always be reasonable,' 'not that they always be correct.'"  *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014) (citation omitted) (emphasis in original) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990)).

In addressing a motion to suppress, "[i]t is the government's burden to establish that a third party had authority to consent to a search" *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991), and it must do so by a preponderance of the evidence, *United States v. King*, 962 F.2d 1076 (D.C. Cir. 1992).  Similarly, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *United States v. Sparks*, 594 F. Supp. 3d 9, 16 (D.D.C. 2022) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)).

    b.  **Discussion**

        i.  **Ben Pollock Had Actual Authority To Consent To The Search of the Van**

Here, FBI agents obtained consent from Ben to search the Van.  The registration for the Van, included as Exhibit 2, clearly indicates that Ben is an owner of the Van.  As such, he had the

ability to consent to the search.  *See, e.g.*, *Cox v. Sapp*, 908 F.2d 972 (6th Cir. 1990) ("The search of the van was plainly by the consent of its owner, and so cannot be the basis for any liability."); *United States v. Stephens*, 341 F. App'x 947, 948 (4th Cir. 2009) ("it is clear that the owner of the van had authority to consent to a search of the van and containers therein."); *United States v. Carter*, 569 F.2d 801, 803 (4th Cir. 1977) (The defendant "contends that the search of the van with the resultant seizure of the pistol violated the rights afforded him by the Fourth Amendment, and that, accordingly, the gun should have been excluded from evidence at trial.  In light of the consent to search, given by the owner of the van, we decline to so rule.").

    In her motion, Pollock objects, saying that she—not Ben—owns the van.  As Exhibit 2 shows, however, the Van is registered to Ben and Tina Pollock.  That Pollock may have purchased an insurance policy on the Van does not alter its ownership.  And the fact that Pollock apparently had sleeping arrangements in the van is irrelevant.  To the extent that both Pollock and Ben had some common authority over the vehicle—Pollock by occupying it, Ben by owning it—consent from either was sufficient to authorize the search.  *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (a search may be authorized by "either from the individual whose property is searched, or from a third party who possesses common authority over the premises." (cleaned up)).  Pollock's challenge to the search of the Van should thus be denied because Ben had actual authority to authorize the search.[1]

---

[1] In any event, as discussed in the context of the Trailer, below, the fact that the Van was registered to Ben certainly means he had apparent authority to consent to the search.

### ii. Ben Pollock Had Apparent Authority To Consent To The Search of the Trailer, And Freely Did So

Ben did not own the Trailer.[2] Nevertheless, he had apparent authority to consent to its search, for two reasons. *First*, Ben appeared to be a primary occupant of the Property. His cell phone records listed the Property's address. Exhibit 3. So too do public websites for his pest control business. Exhibit 4. *Second*, Ben was the known owner of many vehicles (including trailers)—more than a dozen—and during the search, agents observed numerous vehicles on Ben's property. It was therefore reasonable for the FBI agents to believe that the many vehicles on the property he occupied were, in fact, ones he owned or possessed. Given that even Pollock herself, in her initial motion to suppress, believed that the trailer belonged to her father suggests that it was reasonable for the FBI to think so too. ECF No. 191 at 5 ("Ms. Pollock recognizes that the flatbed trailer belonged to her father and he had consent to authorize its search.").

"Even a person who does not *actually* use the property can authorize a search if it is reasonable for the police to believe she uses it." *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014). The Property was a large expanse, and Ben was one of its known occupants. It was reasonable to think that Ben would use a trailer parked on the property he occupied, particularly one to which no cab was attached, and thus had authority to consent to its search.

Yet Pollock's primary argument is not that Ben lacked the authority to consent to the search, but that he was coerced into it. "To be valid, consent must be voluntarily given. Whether consent is voluntary depends on the totality of all the surrounding circumstances." *United States v. Wilson*, 605 F.3d 985, 1027 (D.C. Cir. 2010) (cleaned up). "In applying the totality of the circumstances test, a court may consider various factors, including the consenting party's age, poor

---

[2] After Pollock filed her initial motion, the FBI looked up the license plate and VIN associated with the Trailer and determined that it is registered to Ben's son, Ben Gabriel Pollock ("Ben Gabriel"). Pollock confirmed this in her supplemental motion. ECF No. 194.

education or low intelligence, lack of advice concerning his constitutional rights, the length of any detention before consent was given, the repeated and prolonged nature of the questioning, and the use of physical punishment." *Id.* (cleaned up).

Pollock makes no argument that anything about Ben—his age, education, or intelligence—would make his consent less than voluntary. Instead, Pollock argues that the FBI's takedown was so traumatic that Ben was spooked into signing the consent to search. ECF No. 191 at 4 ("This was not the usual knock and announce and possibly break a door down situation. This felt like an all-out ambush to the Pollocks. It spooked the whole family, including young children, grandchildren to Mr. Ben Pollock and his wife."). But Pollock does not argue that Ben was needlessly detained (he was not), that he was repeatedly questioned (he was not), or that he was subject to physical punishment (again, he was not). And though law enforcement's arrival at the Property must have been startling, this alone is not enough to constitute coercion. *See United States v. Wilson*, 605 F.3d 985, 1028 (D.C. Cir. 2010) ("Although the raid itself must have been startling, the agents did not seek her consent to search until she was out of the handcuffs, had dressed, and was seated on the couch. [The FBI Agent] read the consent form to her and made sure she understood that she could choose whether to sign it or not."). As such, Ben's consent to the search was freely given.

Finally, Pollock lacks standing to challenge the search. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). That is to say, "there is no standing to contest a search and seizure where, as here, the defendant[]: (a) [was] not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the

premises; and (c) [was] not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." *Brown v. United States*, 411 U.S. 223, 229 (1973).  Taking each factor in turn, and as explained earlier, Pollock was not on the Property, either when Ben consented to the search or when the Trailer was actually searched.  She has not alleged, nor did she have, any possessory interest in the Trailer.  Indeed, it belongs to her brother.  And her the charges she faces, while made more probable by the body armor found in the Trailer, does not depend upon them.  Nor was she the individual whose consent was allegedly involuntary.  As such, Pollock has no standing to contest the search of the Trailer.

### iii. No Relevant Evidence Was Obtained From Containers In The Van Or Trailer

Finally, Pollock alleges that, even if Ben freely gave consent to search the Trailer or Van, the FBI had no authority to search the containers in it.  ECF No. 191 at 5.  Setting aside whether this assertion is correct as a legal matter, the evidence that the government may seek to introduce from the Van and Trailer—Pollock's clothing, cell phone, and body armor—were all found in the vehicles themselves, not in containers within them.  As such, this argument is irrelevant.

\* \* \*

For the reasons described above, Ben Pollock had actual authority to consent to the search of the Van, and apparent authority to consent to the search of the Trailer.  He freely gave consent to search both and the FBI therefore had appropriate authority to search both.  Moreover, while the FBI had authority to search containers within the vehicles, the government does not intend to offer any items obtained from inside containers into evidence.  As such, the government submits that a hearing is not warranted and the defendant's motion to suppress should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: February 24, 2023 | MATTHEW M. GRAVES<br>United States Attorney<br>D.C. Bar No. 481052 |
| By: | /s/ Benet J. Kearney<br>NY Bar No. 4774048<br>Benet J. Kearney<br>Assistant United States Attorney<br>1 Saint Andrew's Plaza<br>New York, New York 10007<br>(212) 637 2260<br>Benet.Kearney@usdoj.gov<br><br>Matthew Moeder<br>MO Bar No. 64036<br>Assistant United States Attorney<br>400 East 9th Street, Room 5510<br>Kansas City, Missouri 64106<br>(816) 426-4103<br>Matthew.Moeder@usdoj.gov<br><br>Brendan Ballou<br>DC Bar No. 241592<br>Special Counsel, detailed to the<br>United States Attorney's Office<br>601 D Street NW<br>Washington, DC 20001<br>(202) 431-8493<br>brendan.ballou-kelley@usa.doj.gov |