IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Crim. No.21-cr-447-05(CJN) |
| v. : | |
| : | |
| OLIVIA MICHELE POLLOCK : | |
| : | |

*(defendant)*

### Reply to United States' Opposition to Motion to Suppress

Olivia Pollock replies to the prosecution's opposition to her motion to suppress. The government argues that Ben Pollock, father to Olivia Pollock had actual authority to consent to the search of the van because the van remains registered in his name. Firstly, when law enforcement sought the consent, it does not appear that they checked records to confirm or determine who had legal ownership of the van in question. However, they did observe Ms. Pollock exit the van, in the early morning hours when they arrived. She was the only person at the location that was in the van, near the van, or around the van when law enforcement descended upon the Lakeland land property.

A simple question of ownership to Ms. Pollock did not occur prior to the search. That question would have been answered in the following manner, that Olivia purchased the van from her father for a price of $4,000, $2,000 of which was paid in U.S. currency and the second $2,000 in exchange for work she performed for her father. It appears it was a mere oversight of not having the van registered in

her name, while Ms. Pollock did follow up with obtaining insurance for her van in her name. (see Exhibit 1-3 in Supplemental Pleading).

Even if the van was not considered to be "owned" by Ms. Pollock because of a mere mistake of not filing the sale documents to the DMV and re-registering the van in Ms. Pollock's name, law enforcement's search was unconstitutional. Mr. Ben Pollock, understood the van to belong to his daughter. Ownership itself, does not end the inquiry. The dispositive question is whether Mr. Pollock along with his daughter, "mutually used, and generally had access or control of the van for most purposes." *United States v. Joseph*, 897 F.2d 1168, (D.C. Cir. 1990). Only Olivia Pollock, used, and had access and control over the van. Mr. Ben Pollock did not have "mutual use" of the van with his daughter, even if he had a "legal right" to the van. See *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991).

The *Whitfield* case is instructive. In *Whitfield*, the defendant, a 29 year old, lived in his mother's residence. He had his own bedroom in the house that his mother owned. The Court of Appeals found that although the mother owned the whole house, the defendant's bedroom was not a "common area." *Id*. The fact that the defendant was an adult, and not a child, required an inquiry as to whether the adult son had exclusive use of the room he occupied. *Id*. It did not matter that the door of the room was open either. *Id*.

When agents are faced with an "ambiguous situation," the government cannot meet its burden "establishing a third party had authority to consent to the search." *Id*. "If the agents do not learn enough, if the circumstances make it

unclear whether the property about to be searched is subject to 'mutual use' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.'" *Id*, citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990)

This is exactly the situation we have here. Ms. Olivia Pollock, an adult offspring to Ben and Tina Pollock, resided in the van that was on the Pollock property. At the time law enforcement entered the Pollock land, they did not know who actually owned the vehicles on the property. They observed Olivia Pollock exit the van, they also observed her father exit the main residence. Seeing this and knowing this, made it clear that Olivia Pollock was at a minimum, sleeping in the van. The search of the residence and other structures on the property occurred prior to seeking consent to search the van. Law enforcement clearly understood Ben Pollock to reside in the main brick and mortar residence on the property.

Confronted with who was located in which area of the property in the early morning raid, law enforcement took no steps to determine who had "exclusive" control of the van.[1] Because they did not, the search must be suppressed as it was in *Whitfield*. And had they made such an inquiry they would have recognized that only Olivia Pollock could authorize their consent to search as only she had exclusive use of the van.

---

[1] There is an even stronger presumption here than in *Whitfield*, that Ms. Pollock had exclusive control, as the area, in question, a van, was a separate stand-alone structure outside of the residence, while in *Whitfield*, the area, a room, was within the main structure of the residence and not one that could easily drive off the property.

**Standing as to the Trailer**

It appears from the photographs provided in discovery that the uninhabited trailer, rather than being a four walled enclosed vehicle, was a three walled vehicle with the back door completely ajar, permitting unencumbered access to the residents of the Lakeland property. As Ms. Pollock lived on the property, on which this open vehicle was located, she has standing to assert a "legitimate expectation of privacy." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

**Consent Given Under Duress**

Mr. Pollock was under duress when he consented to the searches. He knew that only if he gave consent would law enforcement finally depart from his property. The arrival of police was hard handed, much more so than most. Observing the force by which law enforcement entered his premise, he felt he had no choice but to consent. See, *Donovan v. A.A. Beiro Const. C,., Inc.,* 746 F.2d 894, (D.C. C. 1984)(citations omitted).

**The Written Consent Does Not Cover Items in Closed Containers**

As noted above, the search of Ms. Pollock's van was unconstitutional. No further inquiry is necessary as to where within the van the items were recovered. However, if such inquiry is necessary, then clearly the items that were not found in plain view would be considered to be beyond the search. According to law enforcement reports, a phone was recovered under the mattress, another item was

retrieved out of a storage bin, and a piece of clothing was found in the rear of the van under a blanket.  One must consider "the presence or absence of a discrete expectation of privacy with respect to the particular object whether it is secured, whether it is commonly used for preserving privacy, etc." *United States v. Peyton*, 745 F.d 546, 553 (D.C. Cir. 2014).  The location of the items which were not in plain sight clearly were in spots meant to preserve their privacy.

## CONCLUSION

For the reasons stated in this motion, Ms. Olivia Pollock moves for suppression of the evidence recovered from the van and the flatbed trailer.

Respectfully submitted,

OFFICE OF ELITA C. AMATO

/s/

_____

Elita C. Amato
D. C. Bar # 442797
2111 Wilson Blvd., 8th Floor
Arlington, VA 22201
703-522-5900

## CERTIFICATE OF SERVICE

I hereby certify that this Reply in Opposition is filed electronically through the ECF filing system on this 27th day of February 2023, thereby, providing service electronically upon all parties in this case including Government counsel.

/s/
Elita C. Amato